Today's case is number 22-1686 United States v. Brian Orlandella. At this time, would counsel for the appellant please introduce himself on the record to begin. John Henry Cooney for Mr. Orlandella. Good morning Judge Cayetta, Judge Thompson, and Judge Rickelman. First I'd like to address what we maintain is the insufficiency of the evidence. It revolves around the fact that the same requests to produce or to send, I should say not produce, but to send pornography was made of minor A and minor B days prior by another man by the name of Sir Gabe. That was his name in the TikTok app. And we suggest that in fact the testimony of one of the officers was that it was described as consistent and the same as what was later found on minor A's phone. The issue of course is that the possession of the pornography in and of itself, while it is otherwise illegal, in this case as to count one, what we're talking about is actually whether he employed, used, persuaded, induced, enticed, or coerced minor A to engage in sexually explicit conduct. And 2256 describes that as producing, directing, manufacturing, issuing, publishing, or advertising. So it is our contention that in this case, although Mr. Orlandella asked for pornography, he did not in fact employ, use, persuade, induce, entice, or coerce. Counsel, why, or let me ask it this way, didn't the evidence also show if you just looked at the sequence in which the conversation between minor A and your client occurred, that there also could have been a reasonable conclusion that the images, video, was sent in response to your client's request? Because I understand there's an alternative conclusion, but why could the jury not have reached the conclusion looking at the conversation in context that it was your client that requested that? Well, I'd suggest that in fact the weight of the evidence is that it was not because of the fact that the same evidence was in fact, the same material was in fact requested by Sir Gabe. And given that, the weight of the evidence is that it was not in fact requested by Mr. Orlandella. Well, then that would say that if Gabe were being tried today, Gabe couldn't be convicted either because it was requested by your client. Well, that's a little hard to figure out, Judge, because of the fact that, that's another issue, but the fact that the material on, all the material on minor A's phone and all the material, well, no, excuse me, all the material on minor A's phone was produced, but only a smidgen of the evidence on minor B's phone was produced. As a result, the record is, it's difficult to tell from the record whether that's so or not. If in fact, if in fact Sir Gabe employed, used, persuaded, induced, enticed, or coerced minor B to produce the evidence and it was then sent from minor B to minor A, it was not produced, it was not within the statutory definition. It was not produced at the, by, I don't want to continue repeating all those words, but it was not produced at the behest, if you will, of, within the meaning of the statute of Mr. Orlandella. So I'm not so sure you're right, Judge, I think Sir Gabe could be, could be prosecuted. Counselor. If he, if it was made clear here. Counselor. Pardon me? I'm sorry, but I don't think you answered Judge Rickleman's question. I'm sorry, Judge, I thought I did. Why couldn't it be reasonably determined by a jury based upon the sequential order that it was your client who persuaded minor A to send photographs? Well, as I, as I said, Judge, I think that the reason is that it was already produced by, at the, by minor B for Sir Gabe, and therefore it was not, it may have been, it was sent, my client asked for it, it was sent for, to him. He asked for it, there's no doubt about that. But the question is not whether he asked for it, it's whether it was produced, et cetera, for him. But wasn't her communication on May 18th, her first one, that is, as I read that, the video had not yet been taken. I don't know, I'm not sure what you're referring to, Judge. On May 18th, when minor A said she would be taking a bath, and then your client made his request for videos. That would be taking a bath sounds like the bath hadn't yet been taken. By her. Right. That doesn't mean it hadn't been taken by minor B, and the actual video wasn't sent until two days later. It's pretty unusual that somebody would say they're taking a bath saying that they intend to take a bath within two days. So the video was sent on the 20th. The discussion about the bath was on the 18th. Some of the bath photos depicted your client's face. No, my client sent videos to, that's count two that we haven't addressed. The bath photos, I think one included minor A's face. The rest did not. But one did. One of her sitting in what appears to be a bath, yes. But we don't know when that was taken. We don't even know. Part of the problem here is that the identifying metadata for all of the images, I believe, except for the ones that were on minor B's phone, which showed that they were produced two to four days prior to any request by Ms. Norlandella. But we have to read the evidence in a light favorable to the verdict. And you've got a chronology here where minor A references a future bath on the 18th. That's followed by your client making requests for videos. Then that's followed in a day or two with the supplying of the videos and the pictures, one of which shows the face of minor A. Given that chronology, isn't that enough right there for a jury? Well, again, Judge, I think it's just the question of the fact that minor B, that it's appeared to be the same video that was on minor B's phone, which would indicate that it was in fact produced by minor B at the behest of Sir Gabe. So that's why I'd suggest it is not that the evidence fails in that with respect to Mr. Orlandella. Counsel, can I ask you a question? If you look at the government's brief, page 19. Yes, Your Honor. If you just want to take a minute to get there. Yes, Judge. There's a list of three exhibits there at the top of the page. Do you see those? I do, Judge. Do you agree that those are the three, it's two videos and an image, that those are the three exhibits that were the basis of count one? Yes, Judge. So I guess the question I have for you is what was, is your position that both of the videos, so exhibit 2113 and 2127, those same exact videos were on minor B's phone? Is that what you're arguing? That, Judge, I'm just quoting the evidence from the, I believe it was a police officer, and I don't recall where we cited it in our brief, but he was asked about the relationship between the evidence found on minor B's phone and the evidence found on minor A's phone. I understand, and I saw that, the testimony, that it was consistent. But I guess I'm asking more specifically, is exhibit 2127 and 2113, are you saying that those two videos are exactly the same? That's what the witness said, Judge. The witness was not specific. The witness didn't say exhibit 21, you know, et cetera. So there was no specification. I recognize that. But when asked about the relationship between the material found on minor B's phone and minor A's phone, the two words that were used were consistent and then the same. Let me just try and ask it a slightly different way. I thought you were arguing to us that the reason why the evidence is insufficient is because the videos that minor A sent are the same exact videos that were on minor B's phone, and those videos were solicited by somebody else. So if these are the videos that are the basis of the conviction, can you just point us to where the evidence shows that these two particular videos were on minor B's phone? Where is that in the trial record? Just the testimony of the officer, the police officer, who said that they were the same. I thought the officer just said they were consistent. That seems different than the same. I believe he said consistent. He also used, quote, unquote, the same. And were those videos given to defendants' counsel at the beginning of trial? They were given to defendants' counsel in the middle of the trial. They had been requested pretrial and denied by the magistrate judge. At that point, there was no appeal by defense counsel, but the government also didn't produce them. And then in trial, and I don't remember what day it was, but it was not the beginning. It was at least a day or two in. Reference was made to these in the evidence, and the trial court then, I think clearly off the record, spoke to both counsel and said, okay, I'll give you what I have. But that was only a smidgen, well, not a smidgen, I don't know, but it's only a part of what was on minor B's phone. Next slide. I would suggest that if you look at the statutory language employed, used, et cetera, that read separately and as a group, it shows a congressional attempt to apply an intent to actively make child pornography. There is an element of forcefulness in all of those definitions, and it is not met in our view by merely asking for them. This is not somebody who's hiring somebody to do it. It's not somebody who's using somebody to do it. It is he asked for it. So you're saying repeatedly asking a minor those requests is not enticing? That would be my position, yes. And what's your support for that? To ask and to entice are two different things. Or persuade? I don't think a lot of persuade. I don't see that there's any evidence that she needed persuasion. Well, repetition can be persuasive? If it's just asking, I'd say no, Judge. There was one thing he asked for, and she said no. I can't remember what it was, but there was at one point he asked for something, and she said no. I'm not going to do that. She did what she wanted to do. I'd suggest that the evidence is that she was a willing participant, not somebody who was persuaded. The other, since in our view that there is no act consistent  and because in our view that there is no evidence of the employing and using persuading, inducing, et cetera, then there can be no attempt as well. Because there has to be some act. And if the acts themselves don't reach the statutory definition, then there can be no attempt. I see I don't have a lot of time. I'd like to talk very briefly about the plain error in failing to give the specific unanimity instruction. It's clear that the indictment charged two or more offenses. That is, it charged both the substantive offense and the attempt, which are two different crimes. Counsel, you started off in your brief by saying it's a case of first impression? I didn't see anything in this circuit, Judge. So by definition, it can't be plain error under our case law? Judge, I don't know the answer to that. I'm sorry. What's your theory on how the jurors could have found unanimously on count one, but not on count two? Count two was the interior sent by Mr. Orlandella to the minor. And that's, we didn't even argue it in our brief. He sent clearly pornographic material to the minor. That's the basis for count two. I'm sorry, I shouldn't say count one. The act and the attempt versions of count one, I think your argument is that the jury might not have been unanimous on those. Well, for one thing, yes, Judge. And my question then, and let me rephrase it, how could the jury find that he did do it, but that he didn't attempt to do it? Because we don't know. First of all, let me back up and answer that question this way. The government cites U.S. v. Phillips for the proposition that if there's a general instruction, you don't need a specific enemy instruction. And in Phillips, what you had were different elements. My question goes to prejudice prong. How could you have prejudice? I'm trying to understand what the scenario is. If the jury found... You had three different images. They didn't necessarily agree on those images. But the attempt, you mentioned the attempt versus the act. Are you saying the jury could have been, some of the jurors could have been attempt and some of them could have been act? Yes, Judge. There's also a different element for the attempt. You have to show the knowledge... Right, but how could anyone be attempt and not... How could anyone be an act but not an attempt? Well, because, to go back to what I was saying about the sufficiency of the evidence, in our view, what he did doesn't meet the statutory language. And so therefore, there's a question about whether it's a crime at all, and then the question is about whether it's an attempt. And the jury may or may not have found that he knew she was a minor. She did lie about her age. The government, in its brief, points out that she looks young. And I suggest to you that that's not... You don't know how old somebody is. There's a term for it, neanamorphic, which is somebody who looks younger than their age. And I suggest in those videos and photographs, she looks like a teenager, but you can't tell how old she is. So we do think that it's possible that the jury could have split on the attempt versus the completion of the crime. I'm out of time, but if you have... Thank you. Thank you, Judge. Thank you, counsel. At this time, if counsel for the appellee will please introduce himself on the record to begin. Good morning, Judge Cahill. I may please the court. I'm Mark Quinlivan on behalf of the United States. Let me start with a sufficiency claim, because with respect, this was not a close case. And let me talk about the sequencing that the court has addressed with respect to the videos and the images in question. It began on May 18th of 2018 when Minor A messaged that she would be taking a bath. And the defendant messaged in response, can you take videos for Daddy? And he continued to press the issue. You should make a video for Daddy. And then another message, make Daddy a video. Later, he sends a message, and these are often, and I apologize in advance, but often in graphic and very vulgar terms. He said, you should help Daddy come. And she said, how? And he messaged back, I want news and for you to act like Daddy's little slut, okay? So then on May 20th, when she said that she had just gotten out of the bath, the defendant messages in response, yeah, can Daddy see? And she responds with a message saying, I used a brush. And he said, did you take any videos? Within just a little more than a minute later, she sends the video, which is... Counsel, let me ask you this. There is evidence that she was also responsive to some other person. Now, if the same kinds of videos were requested and made before May 18th, doesn't that at least give some force to their argument that this is not a product of persuasion, coercion, or any other statutory violation? That she, in fact, could be viewed as doing all of this voluntarily as she had done it in the past with another person? And Judge Thompson, that is precisely the argument that the defense made to the jury in this case. The jury did hear the evidence from Sergeant Griffiths about that she had seen a communication between Minor A and someone known as Sir Gabe, although she did not remember the content of that video. And the jury also heard testimony from Task Force Officer DeMello about the content of certain videos that were found on Minor B's phone. Those were not the exact same videos that were the subject of the counts in this case. Where is that in the record, that they're not the exact same videos? Well, you're going to find it I think it's testimony, it's pages 943 to 948 of the appendix. And that's Task Force DeMello's officer's testimony about its four things that were extracted from Minor B's phone. And if I could just go to the other two very quickly because as these exchanges continued the defendant continues to request sexually explicit conduct or pictures and videos from Minor A she sends him an image that cannot be made out and he responds, more like baby and video it using a graphic term to refer to her private parts. So she then sends, within a minute the image that is Exhibit 21-26 and the defendant responds, another very graphic image and then he says, I want a video of that Type T, another very vulgar term used. And a little more than a minute later Exhibit 21-27, which is the video of Minor A engaged in and the defendant in response said please more, don't you stop. So based on all of this, yes, a rational jury could easily find that the defendant committed a violation of Section 22-51A and an irreducible minimum that he attempted to commit that violation. Counsel, I know that Minor A's mother testified at trial or this is my understanding and that she confirmed that the image of the three exhibits that are the basis of Count 1 she confirmed that the image was definitely Minor A because I think the face was visible in that image but what about the videos? Did anyone ever confirm that the person in the two videos was in fact Minor A? No just to correct, actually what the mother testified to was a separate image that Minor A sent that were her face and her upper body were visible. Minor A's mother testified that that was Minor A and that that was taken in the motel room in Beaumont, Texas where they were staying that weekend. The other three the face in both of the videos and in the image are not visible but you can clearly see and I think a jury could rationally see in looking at those videos and that exhibit that it was the same bathroom where the image that Minor A's mother did testify to that it was taken in the same place. But nobody affirmatively could confirm to the jury that the image in the two videos that are the subject of Count 1 were definitely Minor A. They had to infer it. That's correct Judge Rickleman. Just going back briefly to the sufficiency and I just want to add once again that at an irreducible minimum a rational jury could have found that the defendant attempted to violate Section 2251A. On the specific unanimity instruction claim I think Judge Thompson had that exactly right. This court has never said that a specific unanimity instruction is required in these circumstances where both the completed offense and attempt are charged in 2251A. The only case the government could find on that question was the Fifth Circuit's unpublished decision in the Gace case where it said that there's no plain error where the general unanimity instruction is given as it was here and there's no juror note on that question. And as to the question of the images as we acknowledged in our brief this court has said that the appropriate unit for prosecution is each individual image. But going back once again there's no case that says that that necessarily requires a specific unanimity instruction particularly where a general unanimity instruction was given as it was here and the jury could easily have found and in fact the record shows that based on the evidence all three images and videos satisfy the statutory standards of the third and the fourth prompt are not satisfied. Are the facts in that Fifth Circuit case similar? Are they about a situation like here where there's an attempt and the actual act charged in the same? Yes Judge Rickleman again it's an unpublished decision so I think the text it's a per curiam unpublished decision it's fairly short but it does involve this particular statute 2251A where the claim was specific unanimity instruction was required because the defendant was charged with both the completed offense and and I think that's the most on point case we have noted the courts of appeals and other cases that have said you can't show plain error where a general unanimity instruction as a general matter. Counselor taking you back a little bit I was a little bit baffled as to why the government so resisted producing the other information that I believe you and why the resistance then some was produced but there's my understanding is that there's other material that never got produced and it just concerns me that the defense may have been prejudiced by not having the available information. Absolutely Judge Thompson I hope to allay your concerns on that so there are two separate issues on that one is the communications with Miner A and Sir Gabe and the second one is the images or any video material from Miner B's phone. Now as we noted because the defendant never raised a Brady claim before none of these issues were definitively resolved by the district court. But the Brady obligation is the government's. Absolutely and I would like to point out Judge Thompson when you're talking about images child pornography like in this case typically what happens is that information is made available to the defendant for inspection. Now again because this issue was litigated there's nothing in the record that talks about what happened in this case but as the briefs make clear for about a little more than a year the government was under the impression that Miner B's phone was Miner A's phone and I can represent having looked at the materials that information was made available to the defendant for inspection so there's I would suggest there's no concern it was made available and at a minimum because this claim was never pressed there was no findings that this court could make on that subject. Well let me just was it clear at the point that the magistrate judge had a hearing on this information that what the defendant knew at the time was additional available information? So the only issue that was before magistrate judge Cabell was the name of other adults who Miner A might have communicated with. There was no issue before the magistrate judge about video material from Miner B's phone. And was it clear by that point that the government had misunderstood which phone was which? It was not clear at that point no but as I said I think again my understanding having seen is that that material was available and of course you know I'm going beyond the record but you know because it wasn't presented below there certainly the record is at a minimum unresolved. But with respect to the communications with Miner A the government had a significant concern under federal rule of evidence 412 that that information was not producible because it's other types of sexual activity that a victim has engaged in that was litigated in front of the magistrate judge. The magistrate judge concluded that that information should not be produced. No appeal of that was taken to the district court nor under rule 412 you have to a party who wants to seek such information has to give the district court 14 days advance notice. That also wasn't done. So the government had a good faith belief that this information was not admissible under rule 412. The district court when it addressed this question concluded that it perhaps was exculpatory but then ultimately concluded that it wasn't material given the vast amount of the other information in the case. So even if you get beyond the waiver and this claim is waived because it wasn't raised below and plain air isn't addressed on appeal it wouldn't satisfy the plain air standard. So at what point was defendant notified that the two phones had been switched? I believe prior to trial and I don't have the exact date but the government sent a letter informing the defendant of the information that the information was actually on a different phone and then produced the materials that were extracted from minor A's phone. I mean was it just weeks before? Do you have a sense of how much time? I'd be happy to provide a letter with that I don't want to be inaccurate. I don't know exactly when. But I can say as you can see from the record there were actually two sets of information the very same communications were made available to the defendant. So it wasn't I would suggest on the very eve of trial but I will provide the court with those dates. Thank you. So then what was exactly the additional information that was made available during the trial that the judge said probably should have been made available earlier? It was the identity of Sergei. It was the identity of Sergei being the other person that the defendant had communicated with and then he allowed defense counsel to question Sergeant Griffiths who said that she did see a communication on minor A's phone with Sergei and that there was a video although she could not remember the contents of the video. One more point of clarification. At the point the government thought that the minor B's phone was A's phone nothing was produced but the defendant was allowed to view it. And then at some point when you realized there was a phone switch there was actually information extracted and produced. So when you believed that the wrong phone was the phone, why wasn't there an extraction from that phone produced for the defendant? I'm going beyond the record because this rate wasn't raised below. When minor A's mother brought this to the attention of the police department in Port Neches, Sergeant Griffiths took screenshots of what she saw on minor A's phone. That was produced to the defendant. Obviously what was on minor B's phone actually wasn't the same as what was on minor A's phone. When the government became aware of that, that information was produced and or made available to the defendant. But in terms of why wasn't it produced my understanding is that there wasn't anything in minor B's phone that matched up to what was in minor A's phone. But again this is a claim that and I think this court said it's an unpublished decision but the Singletary case, when you have a Brady claim like this that isn't raised below and there are any number of unresolved questions this court isn't going to address it for the first time on appeal. I would suggest that that's the appropriate disposition of that claim here. Thank you. Thank you counsel, that concludes oral argument in this case.